Michael Shane HENNESSY, Plaintiff,

v.

SELECTIVE SERVICE LOCAL BOARD NO. 21, HAVRE, MONTANA, Mark J. Mayer, as Executive Secretary of Local Board No. 21, Havre, Montana, and Richard Kendall, as State Director of the Montana Selective Service System, Defendants.

Civ. No. 757.

United States District Court
D. Montana,
Billings Division.

Sept. 11, 1968.

Michael H. Rosen, Seattle, Wash., and Thomas E. Towe, Billings, Mont., for plaintiff.

Moody Brickett, U. S. Atty., Butte, Mont., and Arthur W. Ayers, Jr., Asst. U. S. Atty., Billings, Mont., for defendants.

### ORDER AND MEMORANDUM OPINION

JAMESON, District Judge.

In a complaint filed July 8, 1968, plaintiff seeks an order enjoining defendants from proceeding with plaintiff's induction into the Armed Forces pursuant to an order to report for induction issued June 19, 1968. This court issued a temporary restraining order on July 9, and hearing on order to show cause was held on July 26. Briefs have been filed by the respective parties.

At the hearing on July 26, numerous motions were presented, including de-

fendants' motion to dismiss on the related grounds that (1) this court is without jurisdiction to review the classification or processing of a Selective Service registrant except through habeas corpus or as a defense to a criminal proceeding, and (2) the complaint fails to allege a "justiciable controversy" to support jurisdiction in this court. Since I have concluded that this motion must be granted, it is unnecessary to consider the other motions submitted by the respective parties.

Three witnesses were called by the plaintiff at the July 26 hearing—the plaintiff himself, Lieutenant Denis C. Englisby, Personnel Psychologist, and Major Frederick W. McIlveen, Commanding Officer at the Armed Forces Examining and Entrance Station, Butte, Montana. Mark J. Mayer, Executive Secretary of Local Board No. 21, Havre, Montana, testified for the defendants, and the Local Board's file relating to plaintiff was received in evidence. The evidence pertinent to a determination of the question of jurisdiction may be summarized as follows:

Plaintiff graduated from high school in Havre, Montana, in June, 1967. He was classified 1–A on October 17, 1967. On March 14, 1968, an order to report for physical examination was mailed to plaintiff by Local Board No. 21. On March 25, plaintiff commenced a full time course of instruction at the University of Montana, Missoula, and on the same date Local Board No. 21 received a request for student deferment. On April 4, 1968, plaintiff applied for and was granted a transfer for physical examination. On April 22, plaintiff was again ordered to report for a physical examination, this time by Local Board No. 32, Missoula.

On April 28, 1968, Local Board No. 21, Havre, received verified evidence of plaintiff's enrollment in the University of Montana. Mayer testified that no action could be taken on the request for a student deferment at that time because two of the three board members were unavailable. The Board next convened

on May 31, 1968, with two members present.

Pursuant to order from the draft board in Missoula, plaintiff appeared at the bus depot in Missoula on May 13, 1968, at 9:00 P.M. According to plaintiff there were several antidraft pickets at the bus depot. During the bus ride to Butte, where the physical examinations are given, plaintiff distributed antidraft leaflets to other registrants on the bus.[1] Registrants were to report at the station in Butte at 7:30 A.M. on May 14.

On the morning of May 14 Lieutenant Englisby met plaintiff at the entrance to the examining station. When told to follow the Lieutenant, plaintiff complained that it was not yet 7:30. Englisby found that it was 7:28, waited for two minutes, and again requested the plaintiff to follow him. Plaintiff was taken to room 106, where other registrants were receiving orientation preliminary to the physical examination. Plaintiff continued to pass out the leaflets to other registrants in this room, and Lieutenant Englisby described his conduct as "boisterous".

Lieutenant Englisby took plaintiff into his office, whereupon plaintiff sat on the desk, with his legs pulled under him. Englisby explained the consequences where a registrant is found to be uncooperative. He told plaintiff that if plaintiff would leave the leaflets in that office, he could retrieve them after the physical was over. Plaintiff was unwilling to give up the leaflets. Englisby testified that he then told plaintiff that he could keep the leaflets during the physical examination if he would not distribute them. This had been done in the case of another registrant that same morning. Plaintiff denied having been given such an option.

Major McIlveen then entered the office. The major testified that plaintiff was told that if he wanted to submit to the physical examination he should go into room 106 with the other registrants. Englisby testified to the same effect. Plaintiff testified that the "major turned to me and he said, 'Well do you, Mr. Hennessy, wish to continue with the physical examination process, or do you wish to be labelled "noncooperator" ';" and that plaintiff replied, "I told him that the decision wasn't mine, because I had been in the examination room, and they had taken me out of there so I could no longer continue with the examination process, and I had no authority to label myself 'noncooperator'". According to plaintiff, the question was repeated three times with the same answer.[2]

1. The leaflet reads in part:
"YOU CAN KEEP
THIS LEAFLET
"YOU'RE STILL A CIVILIAN WHILE
YOU ARE ON THE BUS.
"YOU ARE UNDER CIVIL LAW UNTIL YOU ARE INDUCTED INTO
THE ARMY.
"Don't let the military push you around; make them treat you with respect.
"YOU CAN PASS OUT ANTI-WAR LEAFLETS INSIDE THE INDUCTION CENTER.
"They will throw you out and you can go home. Legally they can't touch you. (If you would like some materials, talk to us at the gate. We can tell you some more about it.)
"YOU DO NOT HAVE TO FILL OUT THE SECURITY QUESTIONNAIRE.
"You are protected by both the First and Fifth Amendment of the U.S. Constitution. If you do not fill out the form, your induction will probably be delayed several months while they try to decide whether or not you are a security risk. You will also be asked to fill out several other forms; you do not have to. Don't agree to give up your civil liberties.
"YOU DO NOT HAVE TO STATE WHETHER OR NOT YOU HAVE A CRIMINAL RECORD.
"Don't sign away your rights; don't give the government information that could be used against you."

2. Plaintiff testified that if he had been asked whether he would take the physical examination he would have answered "Yes"; that he felt he had attempted to take the examination, and that he had no objection to doing so. It is clear from plaintiff's own testimony, however, that he was given a clear choice of continuing with the physical examination process or

After this conversation, plaintiff followed Major McIlveen from the room and saw another room across the hall where three registrants were sitting. Plaintiff then passed out the leaflets to this group. While plaintiff testified that "they were just sitting", Major McIlveen testified that they were in the process of taking a test.

According to plaintiff, McIlveen then returned, and the major, lieutenant and someone with Selective Service were standing in a group. Following a conversation which plaintiff could not hear, the "lieutenant walked up to me and he said 'I have labelled you noncooperator' ". Plaintiff then left the induction station.

On the same day letters were written to the Board by Lieutenant Englisby, Major McIlveen, and Colonel Don Redpath, Deputy Director SSS, setting forth what had transpired at the station. On the basis of these reports the Board, at its May 31 meeting, declared plaintiff delinquent. A delinquency notice, signed by James W. Brubaker, a member of the Board, was mailed to plaintiff on the same date, the notice reciting that he had been declared a delinquent because of his failure to perform "the following duty or duties required of you under the selective service law: 'uncooperative' registrant at the Induction Station at Butte, Montana, on May 14, 1968, and failure to submit to Physical Examination as ordered by Local Board No. 21, Hill County, Havre, Montana". On June 19 the defendant Mark J. Mayer as executive secretary of Local Board No. 21 signed the order for plaintiff to report for induction.

The Selective Service Act as amended in 1967 specifically provides that, "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution * * * after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war of any form * * *". 50 U.S.C. App. § 460(b) (3), as amended Pub.L. 90–40, 81 Stat. 104 (1967).

■ The 1967 amendment in effect clarified and made explicit the rule that judicial review of draft board classification ordinarily is obtainable only in a criminal prosecution. "Except when the Constitution requires it judicial review of administrative action may be granted or withheld as Congress chooses." Estep v. United States, 1946, 327 U.S. 114, 120, 66 S.Ct. 423, 426, 90 L.Ed. 567.[3] The rationale for limiting preliminary judicial review of Selective Service Boards' decisions is of course the necessity for insuring an adequate supply of military personnel to uphold the national security and "to meet the need * * * for mobilizing national manpower in the shortest possible period". See Falbo v. United States, 1944, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.[4]

being termed uncooperative. If he were willing to take the examination he could have said so. Instead he engaged in semantic quibbling and suggested that the decision wasn't his but that of the officers. When plaintiff was given an opportunity to go to the examining room with the other registrants and did not do so, the officers could properly find that he was uncooperative.

3. Regarding the effect of Section 460(b) (3) prior to the 1967 amendment the Court said:
"* * * The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." 327 U.S. at 122, 66 S.Ct. at 427.

4. See also Moskowitz v. Kindt, 3 Cir. 1968, 394 F.2d 648, and cases there cited.

The reason for the 1967 amendment was indicated in a House report:

"The committee was disturbed by the apparent inclination of some courts to review the classification action of local or appeal boards before the registrant had exhausted his administrative remedies. Existing law quite clearly precludes such a judicial review until after a registrant has been ordered to report for induction and has responded either affirmatively or negatively to such an order. In view of this inclination of the courts to prematurely inquire into the classification action of local boards, the committee has rewritten this provision of the law so as to more clearly enunciate this principle. The committee was prompted to take this action since continued disregard to this principle of the law by various courts could seriously affect the administration of the Selective Service System." H.R.Rep.No. 267, 90th Cong., 1st Sess. 30–31, as set out in 1967 U.S.C. Cong. & Ad. News, p. 1333.[5]

Plaintiff relies primarily on Wolff v. Selective Service Board No. 16, 2 Cir. 1967, 372 F.2d 817, decided prior to the 1967 amendment. In Wolff, two college student registrants were reclassified 1–A by their local boards for engaging in a demonstration to protest American involvement in Vietnam. The demonstration took place at the offices of a Selective Service local board in Ann Arbor, Michigan. The two students brought suit in federal district court seeking a return of their student deferments. The Court of Appeals for the Second Circuit reversed the district court's order dismissing the action for lack of a "justiciable controversy".

The court recognized that "in the usual run of Selective Service cases, the registrant must wait until he receives an induction order, and has either obeyed it or is prosecuted for refusing to obey it, before the courts may review the classification". The court concluded, however, that an exception should be made where "the threat to the First Amendment rights is of such immediate and irreparable consequence not simply to these students but to others as to require prompt action by the courts to avoid an erosion of these precious constitutional rights".[6]

As noted supra, this case was decided prior to the 1967 amendment to the Selective Service Act making explicit the rule that judicial review is obtainable only after the defendant to a criminal prosecution has refused to accept induction. Assuming that the question of the alleged violation of plaintiff's constitutional rights is still presented,[7] it is my conclusion that Wolff is clearly distinguishable on the facts.

The actions of the registrants in Wolff were (1) limited to a general protest against the Selective Service system, and (2) not related to the registrants own status under the Act. In this case the acts resulting in plaintiff being declared "uncooperative" were not only in the induction center but were also directly related to the processing of plaintiff and other draft registrants. In Wolff the local boards had "punished" the registrants for what amounted to an exercise

5. The Senate Report is equally clear. See S.Rep.No. 209, 90th Cong., 1st Sess. 10 (1967).

6. The court said further:
"But while the general run of cases do not present a justiciable controversy, it does not follow that no case can. Here it is not relevant whether or not appellants will ever be inducted. The effect of the reclassification itself is immediately to curtail the exercise of First Amendment rights, for there can be no doubt that the threat of receiving a 1–A classification upon voicing dissent from our national policies has an immediate impact on the behavior of appellants and others similarly situated." 372 F.2d at 823.

7. I agree with defendants that in enacting the 1967 amendment Congress intended to overrule Wolff. See 4 Colum.J. of L. & Social Prob. 120, 159 (1967). This does not, however, dispose of the constitutional question on which Wolff was decided.

of constitutional freedoms of speech and assembly. Here plaintiff failed to proceed with his own physical examination after having been advised that if he did not do so he would be termed uncooperative. In addition, his conduct was disruptive of the administrative processing in the examining station.[8]

The assumption that "people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please" has been "vigorously and forthrightly rejected". Adderley v. State of Florida, 1966, 385 U.S. 39, 48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149. In United States v. O'Brien, 1968, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, the Supreme Court upheld a statute making it unlawful to burn a draft registrant's certificate. Speaking through Chief Justice Warren, the Court said in part:

"We cannot accept the view that an apparently limitless variety of conduct can be labelled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms."

The Court rejected the contention that the purpose of the legislation was specifically to punish expression, invoking the "familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive".

The July issue of the Bulletin of the Association of the Bar of the City of New York (Vol. 7 Bulletin 1) contains a report of the Association's Committee on Civil Rights on "Accelerated Induction of Registrants for Activity Deemed by the Selective Service an Illegal Interference with the Draft". A well-documented report distinguishes between conduct of a draft registrant directly affecting his individual status and activity not "directly related to the registrant's own status". It is the conclusion of the committee that "accelerated induction as punishment" for the latter type of activity is "constitutionally impermissible", but that it is "constitutionally permissible to adhere to the traditional application of Selective Service delinquency and reclassification procedures to a registrant whose conduct has affected his own status" and has "committed or omitted a specific act directly affecting his status".[9]

Defendants' motion to dismiss is granted. I agree with Judge Craig that this court lacks jurisdiction to review plaintiff's classification order. This will not of course preclude the defendants from raising the same questions on a petition for habeas corpus in the event of induction or as a defense to any prose-

8. Wolff was also distinguished factually in Moskowitz v. Kindt, supra, and Johnson v. Clark, D.Ariz.1968, 281 F.Supp. 112. Judge Craig held in the latter case that the court could review a classification order only on petition for habeas corpus by one who had submitted to induction or as a defense to prosecution for failure to submit to induction and until such time the court has no jurisdiction to determine whether there was a "basis in fact" for the local board's decision.

9. See also article entitled "Freedom of Expression in Wartime" by Thomas I. Emerson, in a recent publication of the University of Pennsylvania Law Review and Section of Individual Rights and Responsibilities of the American Bar Association entitled "Human Rights—1968". (August, 1968), where the author distinguishes between "action" and "expression", concluding on page 1011 that, "For conduct amounting to expression must be free of restrictions, and conduct amounting to action cannot be governed by the principles appropriate to expression".

cution for failure to submit to induction.[10]

On Motion for Reconsideration

Plaintiff has moved for reconsideration of the court's order of dismissal, based on an affidavit of counsel and memorandum citing cases not called to the court's attention prior to the order entered September 11, 1968. Defendants have filed a memorandum in opposition to the motion, citing other recent cases. After considering all of the cases cited in both memoranda, I adhere to the original opinion and deny the motion for reconsideration.

Plaintiff relies in part on the position of the Solicitor General in Oestereich v. Selective Service System Local Board No. 11, et al, D.Wyo.1968, 280 F.Supp. 78, aff'd 10 Cir. 390 F.2d 100, cert. granted 391 U.S. 912, 88 S.Ct. 1804, 20 L.Ed.2d 651. The court has read the brief of respondents filed in the Supreme Court in that case in September, 1968. From a careful analysis of the argument advanced by the Solicitor General, it is clear that under the factual situation present in this case, the views of the Solicitor General are in accord with those expressed in this court's opinion.

In Oestereich, a divinity student with a IV–D ministerial exemption was declared delinquent, reclassified I–A, and ordered to report on priority induction because he turned in his registration certificate. The district court, affirmed by the court of appeals, held that it lacked jurisdiction because of the "jurisdictional restrictions contained in 50 App. U.S.C. § 460(b) (3)".[1] The Solicitor General, contrary to the position taken by Selective Service, confessed error because Section 6(g) of the Act[2]

expressly exempts, inter alia, "students preparing for the ministry * * * from training and service (but not from registration) under this title". He distinguishes cases such as the one at bar: "The argument need not extend to persons who are deferred, such as students, because they remain liable for service and training, with only the time of service subject to adjustment."[3]

The Solicitor General's distinction between the types of cases is clarified further:

"Section 6(g) of the Selective Service Act expressly exempts ministerial students from 'training and service' under the Act, and contains no exception for such students who become delinquent. On the other hand, Section 10 (b) (3) contains no exception to its sweeping provision that 'No judicial review shall be made of the classification or processing of any registrant * * * except as a defense to a criminal prosecution.'"[4]

The Solicitor General does not contend, as does plaintiff, that Section 10(b) (3) of the 1967 Act is unconstitutional. On the contrary, he argues for its constitutionality in a case of this nature:

"Under Section 10(b) (3), a registrant must either refuse induction and risk criminal prosecution, or submit to induction and seek a writ of habeas corpus, in order to obtain judicial review. Refusal to submit to induction involves a serious risk, since it subjects the registrant to the possibility of criminal punishment of up to five years' imprisonment and a $10,000 fine (50 U.S.C. App. 462(a)). However, a registrant may file a petition for a writ of habeas corpus immedi-

10. Plaintiff filed a brief in support of his petition for a temporary restraining order. At the hearing on July 26 both sides were given an opportunity to file post hearing briefs. Although the time for plaintiff's brief expired on August 8, 1968, no further brief has been filed.

1. Section 10(b)(3) of the Military Selective Service Act of 1967, amending 50 U.S.C. App. § 460(b)(3), Public Law 90–

40, 81 Stat. 100 et seq. The Military Selective Service Act of 1967 is hereinafter referred to as the Act.

2. 50 U.S.C. App. § 456(g).

3. Oestereich, supra, Brief for the Respondents submitted to the Supreme Court of the United States, at 65.

4. Id. at 12.

ately after induction. Habeas corpus petitions must be accorded precedence on a court's calendar (see 28 U.S.C. 2243), thus keeping the registrant's time in service at a minimum if the court should rule his classification and resulting induction unlawful. However short, that time may well be viewed as a hardship; but it is a hardship which the registrant would share in common with many other citizens.

"Indeed, even without the explicit provisions of the statute, there would be strong reasons for refusing to stay inductions simply to avoid imposing the hardship of some military service on a registrant seeking judicial review of his classification. Since each draft board must fill its quota, a preliminary injunction against the induction of a registrant who has filed suit would necessarily require the induction of another registrant to take his place; it would hardly be equitable to impose military service on one person, or at least accelerate his induction, simply to permit another to obtain pre-induction judicial review. Thus, any hardship involved in requiring that the habeas corpus route be taken may well be viewed as inherent in the fair administration of any system of conscription." [5]

It is recognized that there are district court decisions contrary to the position taken by this court. Plaintiff relies upon two cases decided by judges in the Northern District of California—Peterson v. Clark, 285 F.Supp. 698, 1968, and

Gabriel v. Clark, 287 F.Supp. 369, 1968. On the other hand, in three subsequent cases—Paulekas v. Clark, Cavagnero v. Clark), 291 F.Supp. 606, and Hodges v. Clark, 291 F.Supp. 177, two other judges in the same district declined to follow Peterson and Gabriel, and concluded, as does this court, that Section 10(b) (3) is constitutional. It is quite apparent that the weight of authority under factual situations comparable to the instant case support the conclusion expressed in this court's original opinion.

In the original opinion, this court distinguished Wolff v. Selective Service Board No. 16, 2 Cir. 1967, 372 F.2d 817. It may be noted that the Solicitor General in his brief in Oestereich likewise distinguishes Wolff:

" * * * In that case registrants were reclassified for protest activity which was not directly related to any duties pertaining to their own registration or classification. There the court of appeals noted that 'no regulation authorizes a draft board to declare a registrant delinquent or to reclassify him for such action' (id. at 821), and concluded that 'it is not the function of local boards in the Selective Service System to punish * * * registrants by reclassifying them I–A because they protested * * * the Government's involvement in Vietnam' (id. at 822). That is a conclusion from which it is extremely difficult, if not impossible, to dissent.

"But the situation here might be viewed as differing significantly from

5. The brief continues:
"To the extent that hardship is involved in precluding pre-induction review, Congress has made a considered determination that the need for postponing judicial review outweighs any countervailing considerations. Such a legislative judgment should obviously be accorded great deference by the courts. This is not an area where the congressional authority to legislate is at all questionable. Indeed, the Court noted in United States v. O'Brien, 391 U.S. 367, 377 [88 S.Ct. 1673, 20 L.Ed.2d 672], that '[t]he constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping,' citing, inter alia, Lichter v. United States, 334 U.S. 742, 755–758 [68 S.Ct. 1294, 92 L.Ed. 1694]. Congress, acting pursuant to this 'broad and sweeping' power, has made manifest its intent in amending Section 10(b) (3) in order, as noted earlier, 'to prevent litigious interruption of procedures to provide necessary military manpower' (113 Cong.Rec. § 8052 (June 12, 1967) (Sen. Russell))." Brief pp. 22–26.

Wolff. In that case it could not be said that the reclassification was remedial—designed to enforce duties owed by the registrants to their local boards. Rather, it was obviously penal —directed simply toward punishing the registrants for their protest activity, i. e., 'sitting in' at a local board."[6]

The present conflict in the authorities will of course ultimately be resolved by the Supreme Court. In the meantime, this court will adhere to what clearly appears to be the weight of authority, and in the opinion of the court the better reasoned view, that under the facts here presented Section 10(b) (g) is constitutional.

The motion for reconsideration is denied.

---

6. As set forth in the original opinion, here plaintiff was declared delinquent by his Board as "an uncooperative registrant in the induction station * * *" and for "failure to submit to physical examination as ordered" by the Board. There was substantial evidence to support the Board's finding.